*Docu #221*

*Docu #221 Previous Docket #214*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x
:       96 Civ. 4584 (MP)
IN RE SUMITOMO COPPER LITIGATION  :
:
------------------------------------x



U.S. DISTRICT COURT FILED JUN 16 2000 S.D. OF N.Y.

## SUPPLEMENTAL SIXTH AMENDED COMPLAINT

**LOVELL & STEWART, LLP**
500 Fifth Avenue
New York, NY 10110
(212) 608-1900

**MILLER FAUCHER & CAFFERTY**
30 North La Salle
Suite 3200
Chicago, IL 60602

(312) 782-4880

**LOWEY DANNENBERG BEMPORAD
& SELINGER, P.C.**
The Gateway
One North Lexington Avenue
White Plains, NY 10601
(914) 997-0500

Attorneys for Plaintiffs

(Additional Counsel on Signature Page)

**FILED UNDER SEAL**

Plaintiffs complain of defendants on information (except that the allegations about plaintiffs are made on knowledge) as follows:

## SUPPLEMENTAL JURISDICTION AND VENUE

1.  Plaintiffs reallege, repeat and reincorporate herein the allegations and Exhibits of the Sixth Amended Complaint ("Sixth Complaint") in their entirety. The terms used herein have the same definitions as in the Sixth Complaint unless otherwise indicated.

## SUPPLEMENTAL PARTIES

2.  Plaintiffs file this Supplemental Sixth Complaint solely in order to add as defendants on each of the claims pleaded on the allegations of the Sixth Complaint the following three individuals: Shinichi Nishi, Charles A.M. Vincent and Ashley Levett.

3.  By virtue of the allegations in the Sixth Complaint, defendant Levett took numerous acts in this District and the United States and caused the companies which he controlled (including Winchester Holdings USA Inc. and Winchester Brokerage Limited, and all of the other Winchester entities) to take numerous acts in order to manage and operate the affairs of the enterprise and knowingly effectuate the aims of the conspiracy. See Sixth Complaint and supplemental allegations 6-22 infra.

4.  By virtue of the allegations in the Sixth Complaint, defendant Vincent took numerous acts in this District and the

FILED UNDER SEAL                                                        1

\COMPLAINT\SIX-SUPPLE\COMPLAINT.613

United States and caused the companies which he controlled (including Winchester Holdings USA Inc. and Winchester Brokerage Limited, and all of the other Winchester entities) to take numerous acts in order to manage and operate the affairs of the enterprise and knowingly effectuate the aims of the conspiracy. See Sixth Complaint and supplemental allegations 6-20 infra.

5. By virtue of the allegations in the Sixth Complaint, defendant Nishi took numerous acts in this District and the United States and caused the company which he controlled (Winchester Tokyo Metals Limited) to take numerous acts in order to manage and operate the affairs of the enterprise and knowingly effectuate the aims of the conspiracy. See Sixth Complaint and supplemental allegations 21-22 infra.

## SUPPLEMENTAL UNDERLYING ALLEGATIONS

6. In addition to the allegations of the Sixth Complaint, defendants Levett and Vincent committed numerous other acts pursuant to their conspiracy in violation of 18 U.S.C. § 1962(d), in order to manage and operate the affairs of the enterprise in violation of 18 U.S.C. § 1962(c), and in order to commit and aid and abet the common law fraud on plaintiffs, the Class, and the Comex futures market.

7. Levett and Vincent attended meetings in the United States

during 1989-90 (including in September 1990 in Martha's Vineyard, Massachusetts and in this District) with defendant Nishi and others in order to plan the formation of Winchester, plan a departure from the employment of DLT Resources, Inc. of Vermont, and obtain the backing of a "silent partner" from the United States so that they could form and start their own business (which ultimately became Winchester) and continue with Hamanaka their fraudulent and manipulative activities to which the President of DLT, David Threlkeld, was trying to put a stop.

8. Levett and Vincent controlled Winchester and caused it to enter a joint venture with CLR in order to continue the fraudulent and manipulative activities which Threlkeld would not permit at DLT Resources Inc. After Levett and Vincent worked with CLR to engineer an immediate $50 million profit and payment to the joint venture by Sumitomo in June 1993 for the manipulative RADR positions, Levett and Vincent met with Campbell and others while staying in Suffolk County, New York during the summer of 1993. During these meetings with Campbell and others, Levett and Vincent sought to further the manipulation, and conferred with Campbell about leaving his employer, as Levett and Vincent had left their employer, in order to form a new company which could deal profitably with Hamanaka and conduct affairs in New York on behalf of the conspiracy and the conspirators (including Levett and Vincent). As a result of Campbell's discussion with them and with

Hamanaka and others (a) Campbell did leave his employer to form a separate company, Global; and (b) Levett and Vincent caused Winchester to help Campbell and Global by signing a guarantee for the account with CLR of a newly formed Global.

9. During January 1994, Levett and Vincent caused Winchester's New Jersey office to engage in fraudulent transactions in connection with the unwinding of the manipulative RADR transactions, including on or about January 4, 1994.

10. The January 4, 1994 transaction involved 3,220 lots (80,500 tons) of 3 months copper for an approximate value of $140 million on January 4, 1994. Levett and Vincent caused such transaction to be negotiated by phone from New Jersey for Winchester, with Codelco's representative in Santiago, Chile who was named Juan Pablo Davilla. Codelco[1] was a customer of CLR.

11. Levett and Vincent caused Winchester to prepare in New Jersey and send to CLR the trade sheets which Levett's and Vincent's confederate, Ira Levine, had prepared in New Jersey for this transaction.

12. These trades were done at "away-from-the-market" prices as a partial unwinding of transactions undertaken in connection

---

[1] Codelco is the largest Chilean copper producer who contracted with Sumitomo and Global in the summer of 1994 for contracts to deliver copper which were very favorable to Codelco. In fact these contracts were so favorable that, assuming Codelco hedged their commitments, there was no way Codelco could lose money.

FILED UNDER SEAL                                                      4

with RADR, and Levett and Vincent misrepresented and caused Winchester to misrepresent facts pertinent thereto to regulators who investigated same during January 1994. Such misrepresentations were designed to conceal the conspirators' and the enterprise's unlawful activities.

13. During Spring 1995, Levett and Vincent advised Hamanaka to purchase large copper futures positions through CLR and during summer of 1995 advised Hamanaka to purchase large warrant positions in order to artificially inflate prices.

14. As the investigators from the CFTC and exchanges were closing in on the manipulators during 1996, the manipulative enterprise needed to take focused actions in order to somewhat reduce its LME long futures positions and appease the regulators (see ¶¶ 223-224 of Sixth Complaint) but still artificially support and manipulate prices.

15. Among other things, defendants Vincent and Levett turned to a company which they controlled and indirectly owned, Winchester Trading Limited, in order to "compensate" for the reductions in Sumitomo's positions. Specifically, Vincent and Levett caused Winchester Trading Limited to purchase large Comex copper futures contract long positions through Winchester Holdings USA in order to operate and manage the affairs of the enterprise by taking steps to artificially inflate and support copper futures prices.

16. In particular, defendants Levett and Vincent caused

Winchester to purchase more than 2,000 contracts by early January 1996 and more than 4,000 contracts by February 1996 and to continue to hold those contracts until at least March 1996 when Sumitomo was able to stop reducing its positions in order to stop lulling the regulators.

17. The positions which Levett and Vincent caused Winchester Trading to purchase on the Comex called for delivery of more than three times the total copper stocks that were then held in Comex warehouses and had a significant upward effect on prices.

18. Levett and Vincent further operated and managed the affairs of the enterprise by causing their companies to maintain various special accounts registered in the United States with the CTFC in order to trade United States futures contracts including the following:

(a) A CFTC form for the identification of special accounts filed on or about October 14, 1991, which identified Levett as the account executive for Winchester Trading Limited (or CLR) and assigned to Winchester Trading Limited an administrative code in the United States for registration with the CFTC; and

(b) A CFTC special account identification form filed with the CFTC on January 24, 1996 for Winchester Trading Limited which listed the person controlling the Winchester Trading Limited positions as an employee of "Vincent, CAM" (presumably, defendant Charles A.M. Vincent).

19. Levett and Vincent also managed and operated the affairs of the enterprise and committed overt acts to further the RICO conspiracy by themselves taking or causing Winchester to take the acts pleaded in ¶ 10 of the Sixth Complaint including, but not limited to, the following:

(a) Levett and Vincent caused Winchester to enter the joint venture with CLR (Sixth Complaint ¶¶ 64-71);

(b) Levett and Vincent worked with CLR to create, structure and finance the RADR proposal in order to generate an immediate $50 million payment to the joint venture and artificially inflate copper futures prices (Sixth Complaint ¶¶ 5, 73);

(c) Levett and Winchester worked with Hamanaka, Credit Lyonnais and CLR to conceal from the Treasury department and accounting division of Sumitomo the financing of the manipulative RADR and other transactions (Sixth Complaint ¶¶ 6, 24, 33 74-75);

(d) Levett and Vincent advised Hamanaka to buy more copper exchange contracts in order to artificially support and manipulate prices during September 1993 (Sixth Complaint ¶ 8); and

(e) Levett and Vincent travelled with Leighton of CLR to meet with Hamanaka to discuss how to maintain the manipulative RADR positions and artificially support prices (Sixth Complaint ¶ 111).

20. (a) Between 1989 and 1996 (and thereafter) Levett, Vincent and Nishi regularly and consistently came to this District and the United States, and sent to and had communications in this

District and the United States in connection with their business and the subject matter of this suit. This included their dominance and control of the Winchester companies pleaded in the Sixth Complaint, including Winchester (USA) Inc. and Winchester Holdings USA Inc. each of which continuously and regularly transacted business in New York throughout the Class Period under the direction and control of Levett and Vincent.

(b) Among other things, Levett and Vincent caused their company which they controlled to purchase large amounts of Comex futures contracts (including during 1995 and 1996) in order to artificially inflate Comex futures prices for the reasons alleged at ¶¶ 17-20 infra.

(c) The acts of the RICO enterprise and conspiracy alleged herein were undertaken by Levett, Vincent and Nishi through their conduct in this District, their solicitation of customers and other business in the United States, seeking to obtain a "silent partner" in Winchester who was a resident of the United States, and the other acts alleged.

(d) Levett and Vincent caused Winchester Trading Limited to open various accounts with commodity futures brokers in the United States (including Refco, Inc.), consent to jurisdiction, and supply board resolutions (including a board resolution dated January 17, 1994) which described Levett and Vincent as directors and empowered them to make the United States futures contracts trades on behalf

of Winchester Trading Limited.

(e) The defendant conspirators headquartered in New York (including defendants Global, Campbell, Shah and Merrill Lynch) undertook their acts in this District and the United States on behalf of the RICO conspiracy and the conspirators therein, including defendants Levett, Vincent and Nishi. Further, at times after September 1993 and prior to January 1995, the actions undertaken by Global and Campbell in this District pursuant to the conspiracy were controlled, in whole or in part, by Levett and Vincent who caused Winchester to guarantee Global's account with CLR. By meeting with Campbell during the summer of 1993 in East Hampton, later guaranteeing the account of Global with CLR, and their other acts undertaken to form and further their conspiracy, Levett and Vincent expected that the acts in New York of Campbell, Global, Shah, Merrill Lynch and others would further the conspiracy's objectives and financially benefit Levett and Vincent.

(f) Levett and Vincent were not only aware of but caused Winchester to introduce to CLR the purchases of Comex futures contracts by Sumitomo during the Class Period (particularly including during 1993 and 1996). Levett and Vincent were also aware of the purchases by Global, Campbell, Hamanaka and Sumitomo from this District of other copper exchange contracts through Merrill Lynch and others on behalf of the conspiracy.

(g) Levett and Vincent each lived and worked in this District

during 1984-1985, and Vincent maintains or recently maintained a bank account in New York.

21. In addition and in supplementation to the acts alleged in the Sixth Complaint, defendant Nishi took the following steps to manage and operate the affairs of the enterprise:

(a) met in New York, including at Copper Club meetings, and at Martha's Vineyard between 1989 and 1996 in connection with the formation of Winchester and the conduct and affairs of other parts of the conspiracy;

(b) improperly and without authorization entered orders to purchase copper exchange contracts for Sumitomo (Sixth Complaint ¶¶ 248-250);

(c) assisted in structuring the RADR transaction and in trying to maintain it and continue to artificially support prices notwithstanding regulatory pressure (Sixth Complaint ¶¶ 73, 82-84);

(d) made bribe payments to Hamanaka of in excess of $100,000 by the time of the June 24 date of Hamanaka's causing Sumitomo to pay an immediate $50,000,000 in profits to the CLR-Winchester joint venture in order for them to create and implement the manipulative RADR transactions (Sixth Complaint ¶¶ 72, 80, 83-84, 95);

(e) improperly sent false trade recaps to Sumitomo which were used by Hamanaka to cover up Hamanaka's manipulative trades and losses (Sixth Complaint ¶¶ 67, 188(b)); and

(f) ordered or assisted in the ordering of the LME and Comex

copper futures contracts by which the enterprise and conspiracy artificially inflated prices. See Sixth Complaint ¶¶ 133, 151, 173, 187, 239.

22. Levett and Vincent met in New York with Hamanaka, Campbell, Nishi and/or other conspirators at meetings of the Copper Club or other meetings in order to plan, implement, and effectuate the conspiracy to advertise that they were well associated with Hamanaka (and that their collective efforts to purchase large amounts of copper futures contracts had to be reckoned with), and to solicit business, management the operation of their United States companies, and otherwise maintain a presence so as to be able to obtain revenues from the United States and "be known" on the Comex. These meetings included meetings held on some or all of the following dates: early September 1990, June 8, 1993, September 9, 1993, June 8, 1994, September 13, 1994, June 8, 1995, September 12, 1995, in November 1995, in mid-February 1995, on or about December 4, 1995, and on February 15-17, 1996.

23. The running of the statute of limitations against Levett and Vincent was tolled by the filing and maintenance of this action against them between June 19, 1996 and September 26, 1997.

**AS AND FOR A FIRST CLAIM FOR VIOLATION OF RICO AGAINST HAMANAKA, GLOBAL, CAMPBELL, LEVETT, VINCENT, NISHI, CLR AND CREDIT LYONNAIS**

24. Plaintiffs repeat and reallege all other allegations as

FILED UNDER SEAL                                            11

if fully set forth herein.

25. In order to operate and manage the affairs of the enterprise and commit acts in furtherance of the conspiracy, Levett and Vincent caused the purchase of Comex copper futures contracts, and artificially inflated Comex futures prices, knowing and intending full well that those prices would be disseminated over interstate wires in order to mislead plaintiffs and the Class.

26. In order to operate and manage the affairs of the enterprise and commit acts in furtherance of the conspiracy, Nishi ordered or assisted in the ordering of Comex copper futures contracts knowing and intending full well that those orders would artificially inflate Comex futures prices and that such artificially inflated prices would be disseminated over interstate wires in order to mislead plaintiff and the Class.

27. Neither Levett, Vincent nor Nishi disclosed to plaintiffs or the Class the existence of the conspiracy and artificial inflation of prices.

28. As a direct, foreseeable and proximate result of the unlawful acts alleged herein, plaintiffs and members of the Class suffered damages and defendants achieved ill-gotten gains.

**AS AND FOR A SECOND CLAIM FOR CONSPIRACY TO VIOLATE RICO AGAINST HAMANAKA, LEVETT, VINCENT, NISHI, CLR AND CREDIT LYONNAIS**

29. Plaintiffs repeat and reincorporate the allegations

FILED UNDER SEAL                                          12

previously set forth herein.

30. Levett, Vincent and Nishi knowingly joined and facilitated defendants' RICO conspiracy in violation of 18 U.S.C. § 1962(d).

31. As a direct, foreseeable and proximate result of the unlawful acts alleged herein, plaintiffs and members of the Class suffered damages and defendants achieved ill-gotten gains.

### AS AND FOR A THIRD CLAIM FOR COMMON LAW FRAUD IN VIOLATION OF THE LAWS OF THE STATE OF NEW YORK AGAINST HAMANAKA, LEVETT, VINCENT, NISHI, CLR AND CREDIT LYONNAIS

32. Plaintiffs repeat and reincorporate the allegations previously set forth herein.

33. Levett, Vincent and Nishi committed or aided and abetted common law fraud on plaintiffs and the Comex futures market in violation of the common law of New York.

34. As a direct, foreseeable and proximate result of the unlawful acts alleged herein, plaintiffs and members of the Class suffered damages and defendants achieved ill-gotten gains.

WHEREFORE, plaintiffs demand judgment:

(a) ordering that this action proceed as a class action as to all claims previously alleged;

(b) awarding money damages, including prejudgment interest,

on each claim in an amount to be established at trial;

(c) awarding treble damages, statutory attorneys' fees and costs, and other relief on plaintiffs' First and Second Claims;

(d) awarding compensatory and punitive damages in an amount to be established at trial on the Third Claim;

(e) impressing a trust on the ill-gotten gains of defendants in the ultimate res of which each Class member shall have an undivided interest;

(f) directing further proceedings to determine the distribution of the trust among Class members, inter se, and award attorneys' fees and expenses to plaintiffs' counsel; and

(g) awarding such other relief as to this Court may seem just and proper.

**PLAINTIFFS DEMAND TRIAL BY JURY**

Dated: New York, New York
June 13, 2000

LOVELL & STEWART, LLP

By _____
Christopher Lovell (CL2595)
500 Fifth Avenue
New York, New York 10110
(212) 608-1900
Attorneys for Plaintiffs

Of Counsel:

LOWEY DANNENBERG BEMPORAD

FILED UNDER SEAL                                    14

\COMPLAINT\SIX-SUPPLE\COMPLAINT.613

& SELINGER, P.C.
The Gateway
One North Lexington Avenue
White Plains, NY 10601
(914) 997-0500

MILLER FAUCHER CAFFERTY
  AND WEXLER
30 North LaSalle, Suite 3200
Chicago, IL 60602
(312) 782-4880

KIRBY MCINERNEY & SQUIRE LLP
880 Third Avenue, 10th Floor
New York, NY 10022
(212) 371-6600

SCOTT M. BRENNER, ESQ.
220 East 63rd Street
New York, NY 10021
(212) 355-0292

FUTTERMAN & HOWARD
122 South Michigan Avenue
Chicago, IL 60603
(312) 427-3600

HAGENS & BERMAN
1301 Fifth Avenue, Suite 2929
Seattle, WA 98101
(206) 623-7292

MEREDITH COHEN GREENFOGEL & SKIRNICK
Architect's Building, 22nd Floor
17th and Sansom Streets
Philadelphia, PA 19103
(215) 564-5182

MUCH, SHELIST, FREED, DENENBERG,
  AMENT, BELL & RUBENSTEIN
200 N. LaSalle, Suite 2100
Chicago, IL 60601-1095
(312) 346-3100

PLOTKIN & JACOBS
116 South Michigan Avenue
Suite 1300
Chicago, IL 60603

FILED UNDER SEAL                                     15

DAVID SCHACHMAN & ASSOCIATES
122 South Michigan, Suite 1850
Chicago, Illinois 60603
(312) 427-4500

SCHUBERT & REED L.L.P.
Two Embarcadero Center
Suite 1050
San Francisco, CA 94111
(415) 788-4220

STAMELL & SCHAGER
One Liberty Plaza, 35th Floor
New York, NY 10006-1404
(212) 566-4047

ATTORNEYS FOR PLAINTIFFS

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
                                    :    96 Civ. 4584 (MP)
IN RE SUMITOMO COPPER LITIGATION    :    AFFIDAVIT OF SERVICE
                                    :
------------------------------------x

STATE OF NEW YORK    )
                     )  .ss:
COUNTY OF NEW YORK   )
```

MORGAN BRADY, being duly sworn, deposes and says:

I am not a party to this action, am over eighteen years of age, and reside in Yonkers, New York. On the 13th day of June, 2000 I served the Supplemental Sixth Amended Complaint upon the following:

Charles H. Miller, Esq.
Loeb & Loeb LLP
345 Park Avenue
New York, New York  10154

H. Peter Haveles, Jr., Esq.
Cadwalader, Wickersham & Taft
100 Maiden Lane
New York, New York  10038

John K. Carroll, Esq.
Rogers & Wells
200 Park Avenue
New York, New York  10166

Arthur W. Hahn, Esq.
Katten Muchin & Zavis
525 West Monroe Street
Chicago, Illinois  60661

Bruce Birenboim, Esq.
Paul Weiss Rifkind Wharton
    & Garrison
1285 Avenue of the Americas
New York, New York 10019

James H.R. Windels, Esq.
Davis Polk & Wardwell
450 Lexington Avenue
New York, New York 10017

Steven Wolowitz, Esq.
Mayer, Brown & Platt
1675 Broadway
New York, New York 10019

being the addresses designated by said attorneys for such purpose, by placing true copies of same enclosed in a properly-addressed, post-paid wrapper in an official depository under the exclusive care and custody of the United States Postal Service in the State of New York.

*Morgan Brady*
MORGAN BRADY

Sworn to before me this
13th day of June 2000

*Gary J Jacobson*
NOTARY PUBLIC

GARY S. JACOBSON
Notary Public, State of New York
No. 60-4791529
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires Sept. 30, 19~~~~
2001

2